| 1 |
| 2 |
| 3 |
| 4 |
| 5 |
| 6 |
| 7 |
| 8 |
| 9 |
| 10 |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
| 26 |
| 27 |
| 28 |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| ESTHER DIANE ESCUDERO, | Case No. 1:18-cv-01136-EPG |
|---|---|
| Plaintiff, | **FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8).

At a hearing on September 25, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

1

**I.      Whether the ALJ Erred by Failing to Develop the Record**

Plaintiff first challenges the ALJ's decision by arguing that "[t]he ALJ erred by failing to develop the record and obtain an assessment of Plaintiff's mental limitations from a treating or examining source, improperly relying upon outdated opinion evidence and his own lay interpretation of the medical data." (ECF No. 19, at p. 1).

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations and citations omitted). The Ninth Circuit has also explained that "[d]ifferent people may be affected by similar injuries in different ways. Different people have greater or lesser sensitivity to pain. Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual." Penny v. Sullivan 2 F.3d 953, 958 (9th Cir. 1993).

Here, Plaintiff was represented by counsel. The ALJ also had the benefit of two state agency medical consultants, but neither had examined Plaintiff. Both opinions were issued in 2015—one in January 2015 and one in June 2015. The onset date was September 5, 2013, so the opinions were issued in the relevant time period. However, there were also substantial medical records and diagnoses from after the date of the opinions.

The Court has reviewed the ALJ's discussion of the medical record following these two opinions to determine whether they required a physician to interpret the data. Some of the descriptions seem self-evident. For example, Plaintiff reported "no back pain, no joint pain," at an examination on February 20, 2015. (A.R. 25, 701). She reported "no difficulty urinating. She reports no muscle aches and no arthralgias/joint pain," on April 16, 2016 (A.R. 25, 539). On February 5, 2016, the record shows she had "motor strength and Tone: normal and normal tone.

Joints, Bones, and Muscles: no fractures, malignment, or bony abnormalities and normal movement of all extremities." (A.R. 593).

However, other descriptions of medical documents post-dating the physicians' opinions appear to be very medical in nature and not susceptible to a lay understanding. For example, the ALJ summarized "X-ray images of the claimant's right knee revealed an unspecified degree of irregularity of articular margins involving all compartments, without fracture, bony destruction, or significant joint fluid," (A.R. 26); "She was diagnosed with type 2 diabetes mellitus, not stated as uncontrolled and without complication," (A.R. 26); "The claimant's diabetic neuropathy was found to affect both feet, and was coincident with the claimant's knee pain," (A.R. 27); "She was diagnosed with . . . diabetic peripheral neuropathy." (A.R. 27). After summarizing this medical data, much of which post-dated the available medical opinions, the ALJ nevertheless adopted the opinion of Dr. Bugg.

It is also notable that the ALJ rejected the opinion of Dr. Betcher for reasons that would equally apply to the opinion of Dr. Bugg. Compare A.R. 27 ("Dr. Betcher did not examine the claimant personally, and subsequent evidence rendered this opinion inconsistent with the objective record," with A.R. 28 ("Although Dr. Bugg did not examine the claimant personally" in his opinion dated five months after Dr. Betcher's opinion").

Upon consideration, the Court finds that the ALJ improperly failed to develop the record to obtain a physician opinion to evaluate medical records obtain after the opinions of Dr. Bugg. The ALJ's adoption of Dr. Bugg's opinion, without an examination or evaluation of very substantial subsequent treatment records, was not supported by substantial evidence. See Davis v. Colvin 2015 WL 4249398, at *4 (W.D. Wash., July 13, 2015) ("the volume of Plaintiff's medical treatment notes and number of medication prescriptions suggest that further development of the record is necessary to allow an ALJ to adequately evaluate Plaintiff's physical and mental conditions. . . . On remand, the ALJ shall reconsider the medical evidence anew, obtain additional medical opinion evidence as to Plaintiff's physical and mental functioning from a consultative examiner or a medical expert, and further develop the record as necessary.").

///

**II. Whether the ALJ Gave Sufficient Reasons for Discounting Plaintiff's Subjective Complaints**

Plaintiff next argues that "[t]he ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for discounting Ms. Escudero's subjective complaints." (ECF No. 19, at p. 1).

The Ninth Circuit has provided the following guidance regarding a Plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); see also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996).

The ALJ stated as follows regarding Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(A.R. 27).

The ALJ did not identify any particular testimony as not credible or state what evidence undermines the claimant's complaints.

In its opposition, the Commissioner points to various treatment records that supposedly support the ALJ's conclusion, such as those cited above. (ECF No. 22, at p. 19-20). However, the Commissioner's citations are almost solely to the record and not to the ALJ's own opinion.

The Commissioner concedes that the ALJ did not identify any testimony as not credible or explain what evidence undermines the claimant's complaints. The Commissioner also does not cite any specific testimony from the Plaintiff clearly contradicted by such evidence. According to the legal standards described above, this general finding is not sufficient.

Moreover, the Court has nevertheless reviewed the various pieces of evidence cited by the Commissioner, and finds that while they indicate times when Plaintiff showed normal strength and similar findings, they also demonstrate contrary findings at other times. As described above, much of the treatment records include medical information that is not readily subject to a lay interpretation. The Court cannot find that the objective evidence cited by the parties (and not the ALJ) provides clear and convincing evidence that Plaintiff's subjective complaints should be rejected.

The Commissioner also points to the portion of the ALJ's opinion stating that "the residual functional capacity adopted in this finding is consistent with the claimant's self-report regarding her activities of daily living . . . ." (A.R. 27). The ALJ then discusses the lifting restrictions as being compatible with her testimony of not being able to lift her grandchild. Notably, the ALJ does not state that the activities of daily living contradict her testimony and thus cast doubt on her testimony. Rather, the ALJ asserts that they are consistent with the RFC. However, Plaintiff points out that the requirement of light work is inconsistent with Plaintiff's need to sit frequently and limitation of activities to approximately 3 hours in the day. (A.R. 53).

The Commissioner then argues that any error was harmless because it was inconsequential to the ultimate nondisability determination. However, at oral argument, the Commissioner conceded that if the Plaintiff's testimony regarding her need to sit down frequently before she needs a break were credited as true, Plaintiff would likely be considered disabled considering her age and other factors. (A.R. 53 ("Q: Tell me how much activity do you do at one time before you take a break? A. Washing dishes, probably, like, ten minutes before I have to sit down.")).

The Court has also considered whether this error is harmless in light of Plaintiff's testimony regarding the efficacy of her knee injections. On this point, the ALJ explained as follows:

> In terms of the claimant's knee problems, she testified that injections treatment was remarkably effective, reducing symptoms or eliminating them entirely, but that her former doctor is no longer available to perform these injections. The claimant did not offer any explanation why she could not continue to receive such treatment from another provider. The injections appear to have been effective, as the examination of November 2016 appears to indicate. Even in January 2017, when cold weather exacerbated knee pain, objective findings were mild.

(A.R. 27). The parties disagree whether those injections remain available to the Plaintiff. Nevertheless, it is not clear that Plaintiff can perform at the level described in the RFC even with the injections. Plaintiff's testimony about these injections indicated that she could stand for only an hour with the injections. (A.R. 49). Thus, even if the injections were still available, which is not clear from the record, it is not clear if Plaintiff could stand for a sufficient time to perform light work as described in the RFC. (A.R. 24).

After substantial review of the record, the Court cannot determine if the error is harmless and will remand for further proceedings to determine the question of disability.

### III. Conclusion

For the foregoing reasons, the Court remands this case to the ALJ and directs the ALJ upon remand to obtain additional qualified medical opinion as to Plaintiff's physical functioning from a consultative examiner or a medical expert, and consider in light of all medical evidence whether, if Plaintiff's subjective testimony is fully credited, and taking into account the potential for injections in her knee, Plaintiff can perform jobs that existed in significant numbers in the national economy.

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: **October 3, 2019**  /s/ Eric P. Groj
UNITED STATES MAGISTRATE JUDGE